**UNITED STATES DISTRICT COURT**
<u>NORTHERN DISTRICT OF NEW YORK</u>

**KEEHFUS LIMITED PARTNERSHIP,**        **JURY TRIAL DEMANDED**
**KEEHFUS HOLDING CO., LLC, and**
**GARY L, KEEHFUS**

                         **Plaintiffs,**        <u>**COMPLAINT**</u>
            **- against -**

                                        **Civil Action No.:**

**FROMKIN ENERGY, LLC, and**
**LEWIS FROMKIN**

                       **Defendants.**
_____

      The Plaintiffs, by and through their undersigned counsel, as and for a complaint against

the Defendants, allege:

**THE PARTIES**

1.     Plaintiff Keehfus Limited Partnership (hereinafter the "Partnership," or "KLP"), is a

     limited partnership organized under the laws of the Florida Revised Uniform Limited

     Partnership Act, with a principal place of business listed in its organizational documents

     as 241 Settles Hill Road, Altamont, New York.

2.     Plaintiff Keehfus Holding Co., LLC (hereinafter "Keehfus Holding") is a limited liability

     company organized under the laws of the State of Delaware with a principal place of

     business located at 241 Settles Hill Road, Altamont, New York.

3.     Plaintiff Gary L. Keefus is a natural person residing at 241 Settles Hill Road, Altamont,

     New York.  Mr. Keehfus is the sole member of Keehfus Holding.  Mr. Keehfus was also

     an initial limited partner of KLP.

4.     Gary Keehfus and Keehfus Holding own the sole limited partnership interest in KLP.

-1-

5.      Defendant Fromkin Energy, LLC (hereinafter "Fromkin Energy") is a limited liability company organized under the laws of the State of Florida, with a principal place of business located at 5055 NW 98th Way, Coral Springs, Florida 33076.

6.      Fromkin Energy is presently the general partner of KLP.

7.      Fromkin Energy is in the business of promoting oil and gas ventures.

8.      Defendant Lewis Fromkin is a natural person having an address at 5055 NW 98th Way, Coral Springs, Florida 33076.

9.      Lewis Fromkin is a member of Fromkin Energy and a manager of Fromkin Energy.

10.     Until at least June 2, 2006, Lewis Fromkin was a general partner of KLP.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the First Cause of Action pursuant to the Court's original Federal question jurisdiction, inasmuch as the First Cause of Action arises out of Federal Statute (15 U.S.C. § 78j.).

12.     This Court has subject matter jurisdiction over all other causes of action pursuant to 28 U.S.C. § 1332(a)(1), as this controversy is a suit between citizens of different states.  The amount in controversy is more than $75,000.

13.     Alternatively, this Court has subject matter jurisdiction over all other Causes of Action pursuant to 28 U.S.C. § 1367(a) because they arise out of the same transactions and occurrences as the First Cause of Action.  The defendants' representations and promises in connection with the sale of a security (limited partnership interest) also constitute common law fraud, and were made as part and parcel of the negotiations of contracts that underlie the contract causes of action.  Moreover, the defendants' failures to disclose certain partnership opportunities to the Partnership and its partners constitutes both

-2-

securities fraud and a breach of common law fiduciary duty.  Thus, each of the Causes of Action asserted herein arise from a common nucleus of operative fact.

14.     This Court has personal jurisdiction over the defendants pursuant to N.Y. C.P.L.R. § 302(a)(1), in that Lewis Fromkin and Fromkin Holdings transacted business in New York State, and the claims asserted herein arise out of that transaction of business.  Namely, the defendants solicited investors in an oil and gas venture in New York State, had meetings with Gary Keehfus and Keehfus Holdings in New York State (during which the defendants made material misrepresentations of fact) and signed contracts in New York State.  As more fully described in this Complaint, these acts within New York State constitute a substantial basis for the plaintiffs' causes of action.

15.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a)(2) and (b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in the boundaries of this District.  Namely, Plaintiff Gary Keehfus and Keehfus Holding were defrauded while situate in the County of Albany, State of New York.  The parties had key meetings and negotiations in Cazenovia, New York and Latham, New York, both of which are situated within the geographical boundaries of the Northern District of New York.  Moreover, the parties also had significant telephone communications during which Gary Keehfus was situated in Altamont (also within the Northern District of New York) and Latham New York.  These events underlie all causes of action asserted herein.

**FACTUAL BACKGROUND**

A.     <u>**Formation of the Partnership**</u>

16.     In 2005, Lewis Fromkin solicited potential investors in an oil and gas drilling venture that he planned to undertake on certain lands situated principally in the County of

Armstrong, State of Pennsylvania.

17.     In connection with those efforts, in September 2005 Lewis Fromkin met with Gary Keehfus and others about investing in the proposed venture.  This meeting took place in a coffee shop in Cazenovia, New York.

18.     At the September 2005 meeting, Lewis Fromkin, personally and on behalf of Fromkin Energy, represented, among other things, that he and Fromkin Energy had expertise to promote and develop oil and gas wells.

19.     At the September 2005 meeting Lewis Fromkin, personally and on behalf of Fromkin Energy, described the potential venture, and the prospective oil and gas wells to Gary Keehfus.

20.     At the September 2005 meeting, Lewis Fromkin, personally and on behalf of Fromkin Energy, represented that if Gary Keehfus invested capital in the venture, Fromkin and Fromkin Energy would be able to get six prospect wells drilled and developed rapidly, within a matter of only approximately two months.

21.     At the September 2005 meeting Lewis Fromkin, personally and on behalf of Fromkin Energy, represented that his business plan and expectation was that rapid development of the wells within several weeks to two months would attract the interest of large, third party, prospective buyers, such as Exxon, who might purchase the entire venture from investors at a significant return.

22.     At the September 2005 meeting, Lewis Fromkin also represented that a sale to a third party would be attractive to such third parties because Fromkin's independent drilling contractor was willing to sell certain of its operations involved with the wells as a part of a sale of the venture to a third party.

-4-

23. From September to December 2005, Lewis Fromkin and Gary Keehfus had several telephone conversations about the prospective venture.  During said phone conversations, Gary Keehfus was located in the Village of Altamont, County of Albany, State of New York.

24. During said phone conversations, Lewis Fromkin was located in Florida.

25. In those conversations, Lewis Fromkin, personally and on behalf of Fromkin Energy, reiterated his earlier representations that he had the capability to get the prospect wells drilled rapidly, which would make it very likely that interested third parties might purchase the wells, thereby enriching investors.

26. On December 6, 2005, Gary Keehfus and Lewis Fromkin had a meeting at Keehfus' office in Latham, New York.

27. During the December 6, 2005 meeting, Lewis Fromkin represented, on behalf of himself and Fromkin Energy, that he had the capability to get six(6) wells drilled by February 2006, if Gary Keehfus invested approximately $1.3 million in the venture.  Fromkin again represented that he had good reason to believe that a third party would purchase the entire set of wells along with the involved drilling operations of the drilling contractor, at a gain to investors.

28. At the December 6, 2005 meeting, Lewis Fromkin represented, on behalf of himself and Fromkin Energy, that he had retained a drilling company to drill the six wells, at a price of $230,000 per well.

29. At the December 6, 2005 meeting, Fromkin specifically represented, on behalf of himself and Fromkin Energy, that Lewis Fromkin and Fromkin Energy would not take or earn any portion of that $230,000 per well – rather, Fromkin represented that the $230,000 per

well price was strictly the drilling contractor's fee.

30.     At the December 6, 2005 meeting, Lewis Fromkin, personally and on behalf of Fromkin Energy, represented that Fromkin and Fromkin Energy's only earnings from the prospect wells would be a percentage share of revenues generated by the wells.

31.     At the December 6, 2005 meeting, Lewis Fromkin, personally and on behalf of Fromkin Energy, explained to Gary Keehfus that he planned to structure the venture as a limited partnership, in which Fromkin Energy would be the general partner, and the individual investors would be limited partners.

32.     At the December 6, 2005 meeting, Lewis Fromkin, personally and on behalf of Fromkin Energy, presented Gary Keehfus with a limited partnership agreement (the "Partnership Agreement") for the venture, which would become the Keehfus Limited Partnership (previously defined herein as "KLP," or the "Partnership").

33.     A true and accurate copy of the Partnership Agreement is annexed hereto as Exhibit "A."

34.     In reliance on Lewis Fromkin's various representations, Gary Keehfus decided to invest in the venture, and become a limited partner in the Partnership.

35.     At the December 6, 2005 meeting Lewis Fromkin signed and executed the Partnership Agreement on behalf of Fromkin Energy.

36.     At the December 6, 2005 meeting, Gary Keehfus signed and executed the Partnership Agreement.

37.     On December 6, 2005, Lewis Fromkin also presented Gary Keehfus with a subscription agreement, the purpose of which was to enroll Gary Keehfus and Keehfus Holding as a limited partner, in KLP.

38.     During that meeting, Gary Keehfus signed the subscription agreement individually and

on behalf of Keehfus Holding (hereinafter, the "Subscription Agreement").

39.    On or about December 6, 2005, Lewis Fromkin signed the Subscription Agreement on behalf of Fromkin Energy.

40.    A true and accurate copy of the Subscription Agreement signed by Keehfus Holding, Gary Keehfus and Fromkin Energy is annexed hereto as Exhibit "B."

41.    Under the terms of the Partnership Agreement, Fromkin Energy was to be the sole general partner of KLP.

42.    Under the terms of the Partnership Agreement and the Subscription Agreement, Keehfus would make a capital contribution of one million, three-hundred and eighty thousand dollars ($1,380,000) to KLP, in exchange for, among other things, one "unit" of limited partnership interest in KLP to be owned by Gary Keehfus and Keehfus Holding.

43.    Gary Keehfus delivered a check for the $1,380,000 capital contribution to KLP on December 12, 2005.  A true and accurate copy of that check is annexed hereto as a part of Exhibit "B" (last page).

44.    KLP accepted Keehfus' check, and deposited the $1,380,000 in a certain Partnership bank account in December 2005.

45.    On or about December 7, 2005, Lewis Fromkin and his wife Beth Golub Fromkin filed a *Certificate of Limited Partnership* for KLP with the Florida Secretary of State.

46.    The *Certificate of Limited Partnership* named Lewis Fromkin and Beth Golub Fromkin as the general partners of KLP.

47.    The *Certificate of Limited Partnership* did not name Fromkin Energy as a general partner of KLP, even though the Partnership Agreement designated Fromkin Energy as the general partner.

48.    On or about June 2, 2006, Lewis Fromkin and Beth Golub Fromkin filed a *Certificate of Amendment to Certificate of Limited Partnership* with the Florida Secretary of State with respect to KLP (hereinafter, the "Certificate of Amendment").

49.    By the Certificate of Amendment, Lewis Fromkin and Beth Golub Fromkin purported to disassociate themselves, personally, as general partners of KLP.

50.    By the Certificate of Amendment, Lewis Fromkin and Beth Golub Fromkin purported to add Fromkin Energy as the sole general partner of KLP.

**B.    The General Partner's Obligations Under the Partnership Agreement**

51.    Pursuant to the express terms of the Partnership Agreement, the "Partnership was organized for the purpose of engaging primarily in the business of participation in the drilling of oil and gas wells in the State of Pennsylvania."

52.    The Partnership Agreement contains several provisions which strictly limit the general partner's discretion to use Keehfus' capital contribution funds.

53.    Section 6.7 of the Partnership Agreement, entitled "Use of Capital Contribution," provides that the capital contribution "shall be available to the Partnership *to carry out the purposes of the Partnership*."  (Emphasis added.)

54.    Section 6.8 of the Partnership Agreement, entitled "Escrow," provides that the capital contribution monies will be held in escrow, and may only be dispersed to the general partner "for the purpose of commencing preparatory drilling operations."

55.    Section 8.2 of the Partnership Agreement, entitled "Duties of the General Partner," requires the general partner, among other things, to "manage the affairs of the Partnership in a prudent and businesslike manner," and to "deposit all funds of the Partnership" into Partnership bank accounts.

-8-

56.    Section 8.3 of the Partnership Agreement, entitled "Prohibitions on Actions and Limitations of Power of the General Partner," expressly forbids the general partner from possessing or assigning partnership property for any purpose other than a "Partnership purpose" and forbids the General Partner from doing any act "in contravention of" the Partnership Agreement.

57.    Section 10.2(d) of the Partnership Agreement forbids partners from withdrawing amounts from capital accounts except for authorized purposes.

58.    Section 8.2 of the Partnership Agreement also requires the general partner to account to the Partnership and the limited partners, and to make the Partnership's books and records available to the limited partners for inspection and audit upon request.

59.    Section 8.6 of the Partnership Agreement provides that, if the Partnership retains the General Partner for some service, compensation must be "fair and equitable under the circumstances," and in no event can any compensation to the General Partner be more than that customarily charged by persons dealing at arm's length.

## C.    The Operating Agreement

60.    During the December 6, 2005 meeting, Lewis Fromkin and Keehfus also executed a *Joint Venture Operating Agreement* (hereinafter, the "Operating Agreement") pursuant to which Fromkin Energy was authorized to promote and explore the six prospect wells, and to pay the drilling contractor $230,000 per well to do the necessary drilling work.

61.    A true and accurate copy of the Operating Agreement is annexed hereto as Exhibit "C."

62.    Gary Keehfus agreed to sign the Operating Agreement based on Lewis Fromkin's representation that the price of $230,000 per well was to be pay for the drilling expense, and that no part of the $230,000 per well was to be taken or retained by Fromkin or

Fromkin Energy.

**D.      Fromkin's Secret Intention to Misappropriate Partnership Capital and Secret Knowledge That the Wells Would Not be Drilled by February 2005**

63.      Even during the December 6, 2005 meeting, Lewis Fromkin knew that his representations to Gary Keehfus were false.

64.      Fromkin Energy's selected drilling contractor for the prospect wells was a Pennsylvania-based company known as U.S. Energy Exploration (hereinafter, "USEE," or the "Subcontractor").

65.      Although Fromkin had represented to Keehfus that USEE would be paid $230,000 per well, in truth USEE's quoted rate to Fromkin was only $200,000 per well.

66.      In other words, USEE agreed to do the drilling work for $30,000 per well *less* than Fromkin had represented it would cost.

67.      Indeed, Lewis Fromkin intended, as early as December 6, 2006, to keep the $30,000 savings per well for Fromkin Energy, without disclosing the savings to the Partnership, Keehfus Holding, or Gary Keehfus.

68.      Moreover, Lewis Fromkin was aware during the December 6, 2006 meeting that it was not possible to drill the six wells by February 2006.  Indeed, USEE reports that this would be practically impossible, and, on information and belief, due to Fromkin's knowledge and experience in the promotion of oil and gas ventures, he knew or should have known that it would have taken much longer to drill the six wells.

69.      Furthermore, Lewis Fromkin was aware during the December 6, 2006 meeting that the prospective sale to a third party that he described during that meeting was unlikely, because USEE had expressed that it had no intention of selling its involved operations to

any third-party buyer.

**E.**     **Fromkin Carries Out the Misappropriation of Partnership Assets**.

70.     On or about December 20, 2005, Lewis Fromkin caused Fromkin Energy to transfer Gary Keehfus' capital contribution of $1,380,000 from the Partnership bank account to Fromkin Energy.

71.     Thereafter, on or about December 20, 2005, Fromkin Energy deposited $1,200,000 of Gary Keehfus' $1,380,000 capital contribution into a Partnership escrow account (hereinafter, the "Partnership Escrow").

72.     Fromkin Energy, without justification, and without notice to the Partnership, Keehfus Holding, or Gary Keehfus, kept $180,000 of the capital contribution funds for itself, and did not deposit this $180,000 into the Partnership Escrow.

73.     Lewis Fromkin caused Fromkin Energy to take and keep the $180,000 of capital funds fraudulently, secretly and surreptitiously.

74.     Lewis Fromkin caused Fromkin Energy to keep $180,000 of the capital contribution funds so as to "pocket" the undisclosed $30,000 savings for each of the six (6) wells ($30,000 x 6 wells = $180,000) achieved by hiring USEE to do the drilling work for only $200,000, instead of $230,000.

75.     In December 2004 and January and April 2005, Fromkin  paid USEE $200,000 per well out of Keehfus' capital contribution, for three wells on which USEE had by then performed drilling work, for a total of $600,000 (the final three wells have not been started). Lewis Fromkin and Fromkin Energy did not disclose to the Partnership, Keehfus Holding, or Gary Keehfus that Fromkin Energy had paid USEE only $200,000 instead of $230,000, and that Fromkin Energy had retained the $30,000 per well savings.

**F.**    **Fromkin Energy's Failure to Perform the Operating Agreement.**

76.    Since December 2005 and the date of this Complaint, only three of the six contemplated wells have been drilled.

77.    Fromkin Energy has failed to begin performance as to the fourth, fifth and sixth wells despite numerous demands by Keehfus Holding and Gary Keehfus up to April 2006.

78.    Fromkin Energy failed to begin performance as to the fourth, fifth and sixth wells, even though it has already caused the Partnership to pay Fromkin Energy $30,000 per well for each of those wells.

79.    Due to this nonperformance, and the plaintiffs' eventual discovery that the defendants' had misappropriated at least $180,000 in Partnership monies, in April 2006, Gary Keehfus asked that drilling be put on hold pending resolution of these issues.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Violation of Section 10(b) of the Securities Exchange Act**
**of 1934 [15 USC § 78j] and Rule 10b-5 of the Securities**
**Exchange Commission [17 CFR § 240.10b-5]; By Gary Keehfus**
**and Keehfus Holding Against Lewis**
**Fromkin and Fromkin Energy, LLC)**

80.    Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "79" of this Complaint.

81.    Lewis Fromkin, both individually and as agent for Fromkin Energy, LLC, has intentionally deceived Plaintiffs with misrepresentations and omissions of material fact, on which Plaintiffs have reasonably relied, and which have caused Plaintiffs damages.

82.    Lewis Fromkin has made said misrepresentations and omissions of material facts in connection with the purchase sale of securities, and in the course of interstate commerce. Namely, the misrepresentations were made to induce Gary Keehfus and Keehfus

-12-

Holding's purchase of a limited partnership interest in the oil and gas venture, and a number of these misrepresentations were made in telephone communications between Florida and New York.  Moreover, all of the communications were meant to fraudulently induce the Gary Keehfus and Keehfus Holding's investment in a venture that was to be situated in Pennsylvania.

83.   This action is brought within the applicable statute of limitations.  Among other things, it has been less than one year since the time of the alleged misrepresentations (September to December 2005).

84.   Lewis Fromkin's representations that Fromkin Energy could develop the six wells and have all six drilled rapidly, and no later than February 2006 was false, and Fromkin knew or should have known that they were false when made.  Indeed, Fromkin's communications with USEE and his own intimate knowledge of promoting oil and gas ventures made him aware that it would take a considerably longer period of time to drill the wells.  Moreover, Fromkin was aware that USEE would not be willing to sell its operations involved in the venture, despite Fromkin's representation to Keehfus that such a sale would likely be necessary to attract a purchaser of the wells.

85.   Consequently, Lewis Fromkin's representations that there was a strong likelihood of quickly attracting a third-party buyer for a quick return on the investment was false, and Fromkin knew or should have known that they were false when made.

86.   Lewis Fromkin's representation that the drilling cost was $230,000 per well was false, and Fromkin knew or should have known it was false when made.

87.   As alleged previously herein, Fromkin knew at the time he made this representation (December 6, 2006) that USEE would, in fact, charge only $200,000 per well, and

Fromkin intended, secretly, to keep the savings of $30,000 per well for Fromkin Energy.

88.   Consequently, Lewis Fromkin's representation that he would use Keehfus and Keehfus Holding's capital contribution only for the purpose of furthering the Partnership business was false, and Fromkin knew or should have known it was false when made.

89.   The foregoing misrepresentations and omissions were material.  Had Gary Keehfus been aware that Fromkin intended to use a portion of the capital contribution to pay Fromkin Energy $180,000 for no business purpose, Gary Keehfus and Keehfus Holding would not have purchased the limited partnership interest, and would not have contributed $1,380,000 to the Partnership capital.

90.   Had Gary Keehfus and Keehfus Holding been aware that it would be considerably longer than two months to drill the six wells, they would not have invested in the Partnership.

91.   Gary Keehfus and Keehfus Holding reasonably relied on the foregoing misrepresentations and omissions.  Their reliance is evidence by, among other things, payment of $1,380,000 to the Partnership.

92.   By reason of said, reliance, Lewis Fromkin and Fromkin Energy's misrepresentations and omissions have caused Plaintiffs injury.

93.   Plaintiffs have been damaged in an amount to be determined at trial, plus costs and interest.

**AS AND FOR A SECOND SEPARATE
AND DISTINCT CAUSE OF ACTION
(Breach of Partnership Agreement;
By Gary Keehfus and Keehfus Holding
Against Fromkin Energy, LLC)**

94.   Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "93" of this Complaint.

95.     The Partnership Agreement and Subscription Agreement constitute a valid and binding contract between Fromkin Energy, Keehfus Holding, and Gary Keehfus.

96.     Keehfus Holding and Gary Keehfus have fully performed all obligations due of them under the Partnership Agreement and Subscription Agreement.

97.     The Partnership Agreement provides, among other things, that the general partner may only use partner capital contributions in furtherance of the business of the Partnership.

98.     The Partnership Agreement, among other things, forbids the general partner from using, transferring or assigning any Partnership assets, including capital contributions, for any purpose that does not further the Partnership business.

99.     Fromkin Energy's unilateral withdrawal of $180,000 of Keehfus Holding and Gary Keehfus' capital contribution, and retention of said $180,000, constitutes a material breach of the Partnership Agreement.

100.    Removal of any or all of the $180,000 is a material breach of the Partnership Agreement because, among other reasons, the Partnership Agreement forbids the general partner from using capital funds for any use other than furthering the Partnership business, and payment of the $30,000 savings per well to Fromkin Energy for the six wells under the Primary Drilling Contract is not a legitimate use of capital funds that furthers the Partnership business.

101.    Moreover, removal of $90,000 of the $180,000 is a breach of the Partnership Agreement for the separate and distinct reason that, on information and belief, Fromkin Energy took $90,000 as payment to itself for three wells ($30,000 per well) for which Fromkin Energy and USEE have not yet performed any work, or caused any work to be performed.

102.    Accordingly for this separate and distinct reason, $90,000 of the $180,000 taken by

Fromkin Energy is not use of capital funds for a legitimate Partnership purpose.

103.   Fromkin Energy's breaches have damaged Keehfus Holding and Gary Keehfus in an amount of at least $180,000, plus interest and costs.

**AS AND FOR A THIRD SEPARATE
AND DISTINCT CAUSE OF ACTION
(Tortious Interference with Contract; By Gary
Keehfus and Keehfus Holding Against Lewis
Fromkin)**

104.   Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "103" of this Complaint.

105.   Lewis Fromkin, at all times alleged in this Complaint, knew that the Partnership Agreement and Subscription Agreement constituted a valid, binding contract between Fromkin Energy, Keehfus Holding, and Gary Keehfus.

106.   Lewis Fromkin, at all times alleged in this Complaint, knew of the various terms and provisions of the Partnership Agreement strictly limiting the use of partner capital contributions to furthering the business of the Partnership.

107.   Lewis Fromkin, wantonly, intentionally, deliberately, maliciously and by virtue of his management and control of Fromkin Energy, caused Fromkin Energy to remove $180,000 of Keehfus' capital contribution monies from the Partnership Escrow, without justification.

108.   Lewis Fromkin engaged in such conduct for the purpose of harming Gary Keehfus and Keehfus Holding.

109.   By causing Fromkin Energy to remove $180,000 unilaterally from the Partnership Escrow, without justification, Lewis Fromkin and Beth Golub Fromkin caused Fromkin Energy to breach the Partnership Agreement.

110.   As a result of said breach, Keehfus Holding and Gary Keehfus have been damaged in an amount of at least $180,000, plus interest and costs.

## AS AND FOR A FOURTH SEPARATE
## AND DISTINCT CAUSE OF ACTION
### (Breach of Fiduciary Duty;
### By All Plaintiffs Against All Defendants)

111.   Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "110" of this Complaint.

112.   Pursuant to the Partnership Agreement, Fromkin Energy is and has been a general partner of the Partnership since its formation in December 2005.

113.   Moreover, according to the Certificate of Limited Partnership and Certificate of Amendment filed by Lewis Fromkin for the Partnership, Lewis Fromkin was a general partner of the Partnership from December 2005 until at least June 2, 2006.

114.   As general partners, defendants, at all relevant times, were fiduciaries and agents of the Partnership.

115.   As general partners, defendants, at all relevant times, owed fiduciary duties of loyalty, care and good faith to the Partnership and the limited partner(s).

116.   Defendants' failure to disclose that USEE would perform the drilling work for $200,000 per well, rather than $230,000 per well, was a breach of defendants' fiduciary duties to the Partnership, Keehfus Holding, and Gary Keehfus.

117.   Defendants' causing of Fromkin Energy to contract with USEE for $200,000 per well, without disclosing this transaction to the Partnership, Keehfus Holding and Gary Keehfus, was a breach of Defendants' fiduciary duties to the Partnership, Keehfus Holding, and Gary Keehfus.

-17-

118.   Defendants' causing of Fromkin Energy to take $180,000 of Keehfus' capital contribution from the Partnership Escrow, without justification, was a breach of defendants' fiduciary duties to the Partnership, Keehfus Holding, and Gary Keehfus.

119.   Defendants' retention of the $180,000 of Partnership capital, without justification, is a breach of defendants' fiduciary duties to the Partnership, Keehfus Holding, and Gary Keehfus.

120.   The opportunity to contract with USEE at a rate of $200,000 per well was an opportunity that belonged to the Partnership.  The defendants' failure to disclose that opportunity and present it to the Partnership was a breach of fiduciary duty.

121.   The defendants' breaches of fiduciary duty have caused the plaintiffs harm.

122.   Plaintiffs have been damaged by an amount of at least $180,000, plus interest and costs.

123.   To the extent this claim belongs in whole or in part to the Partnership, it would be futile for Gary Keehfus or Keehfus Holding to demand that the general partner (Fromkin Energy) sue the claim on the Partnership's behalf.

**AS AND FOR A FIFTH, SEPARATE
AND DISTINCT CAUSE OF ACTION
(Unjust Enrichment; By All Plaintiffs
Against Fromkin Energy, LLC)**

124.   Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "123" of this Complaint.

125.   Fromkin Energy continues to hold $180,000 of Gary Keehfus' Partnership investment without justification.

126.   Fromkin Energy's taking and retention of the $180,000 enriched Fromkin Energy.

127.   Fromkin Energy has not given fair value to the Partnership, Gary Keehfus or Keehfus

Holding for the $180,000.

128. Fromkin Energy has been enriched at Plaintiffs' expense.

129. It would be unjust, and would offend equity, for Fromkin Energy to retain the $180,000.

130. Plaintiffs have been damaged in an amount of at least $180,000, plus interest and costs.

131. To the extent this claim belongs in whole or in part to the Partnership, it would be futile for Gary Keehfus or Keehfus Holding to demand that the general partner (Fromkin Energy) sue the claim on the Partnership's behalf.

**AS AND FOR A SIXTH, SEPARATE
AND DISTINCT CAUSE OF ACTION
(Conversion; By All Plaintiffs Against all Defendants)**

132. Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "131" of this Complaint.

133. Keehfus' capital contribution to the Partnership of $1,380,000 was paid for a specific purpose – for use by the Partnership to carry on the Partnership business.

134. Pursuant to the Partnership Agreement, the $1,380,000 was to be held in a Partnership escrow account, and preserved for specific purposes.

135. The $1,380,000 capital contribution is an identifiable fund.

136. Fromkin Energy's removal of $180,000 from the Partnership account, without justification, constituted a taking of Partnership property.

137. Lewis Fromkin, by his management and control of Fromkin Energy, caused Fromkin Energy to take $180,000 of Partnership property from the Partnership.

138. The Parnership has the right to possess the $180,000 of misappropriated funds.

139. Alternatively, Keehfus Holding and Gary Keehfus have the right to possess the $180,000 of misappropriated funds.

140.    Plaintiffs have demanded return of the $180,000.

141.    Defendants continue to exercise dominion and control of the $180,000, to the exclusion of Plaintiffs.

142.    Plaintiffs have been damaged in an amount of at least $180,000, plus interest and costs, in the nature of out-of-pocket loss, and are entitled to punitive damages.

143.    To the extent this claim belongs in whole or in part to the Partnership, it would be futile for Gary Keehfus or Keehfus Holding to demand that the general partner (Fromkin Energy) sue the claim on the Partnership's behalf.

**AS AND FOR A SEVENTH, SEPARATE**
**AND DISTINCT CAUSE OF ACTION**
**(Commonlaw Fraud; By Gary Keehfus and Keehfus Holding**
**Against Fromkin Energy, LLC and Lewis Fromkin)**

144.    Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "143" of this Complaint.

145.    Lewis Fromkin, both individually and as agent for Fromkin Energy, LLC, has intentionally deceived Plaintiffs with misrepresentations and omissions of material fact (previously described herein), on which Plaintiffs have reasonably relied, and which have caused Plaintiffs damages, in the manner already set forth in this Complaint.

146.    By reason of said, reliance, Lewis Fromkin and Fromkin Energy's misrepresentations and omissions have caused Plaintiffs injury.

147.    Plaintiffs have been damaged in an amount of at least $180,000, plus costs and interests, in the nature of out-of-pocket loss, and are entitled to punitive damages.

**AS AND FOR A EIGHTH SEPARATE**
**AND DISTINCT CAUSE OF ACTION**
**(Rescission; By Keehfus Holding and Gary Keehfus**
**Against Fromkin Energy, LLC)**

148.   Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "147" of this Complaint.

149.   By reason of Defendants' material, fraudulent misrepresentations of fact, and Plaintiffs' reliance thereon, Keehfus Holding and Gary Keehfus were induced to enter into the Partnership Agreement and Subscription Agreement, and induced to pay a capital contribution of $1,380,000 to the Partnership.

150.   But for Defendants' material misrepresentations, Keehfus Holding and Gary Keehfus would not have entered into said agreements, and would not have paid said capital contribution.

151.   Keehfus Holding and Gary Keehfus are entitled to rescind the Partnership Agreement and Subscription Agreement, with interest and costs.

152.   Plaintiffs have no adequate remedy at law.

**AS AND FOR AN NINTH SEPARATE**
**AND DISTINCT CAUSE OF ACTION**
**(Breach of the Operating Agreement;**
**By Keehfus Holding Against Fromkin Energy, LLC)**

153.   Plaintiffs re-state, re-allege, and incorporate by reference herein each and every allegation contained in paragraphs "1" through "152" of this Complaint.

154.   The Operating Agreement constitutes a valid and binding contract between Fromkin Energy and Keehfus Holding.

155.   Keehfus Holding has performed all obligations due of Keehfus Holding under the Operating Agreement.

156.    Fromkin Energy's failure to begin work on three (3) of the six (6) wells contemplated in the Operating Agreement constitutes a material breach of the Operating Agreement.

157.    As a result of Fromkin Energy's breach of said contract, Keehfus Holding has been denied the benefit of its bargain – to wit, among other things, a return on an investment in three of the wells.

158.    Fromkin Energy's breaches of contract have damaged Keehfus Holding in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment in an amount to be determined at trial, plus costs and interest, and all other relief that the Court deems just and proper.

Dated: August 14, 2006
        Albany, New York

Yours, etc.

**TABNER, RYAN AND KENIRY, LLP**

    /s/ Benjamin F. Neidl
Benjamin F. Neidl, Esq. (Bar Roll No. 512303)
*Attorneys for Plaintiffs*
18 Corporate Woods Boulevard
Albany, New York 12211
(518) 465-9500
*bfn@trklaw.com*

G:\Clients\Keehfus, Gary - 4951\001 - 19801\Final Complaint.wpd